UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| ANGEL PEDROSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-00043-SEB-MPB |
| | ) | |
| THE CITY OF EVANSVILLE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment [Dkt. 68], filed on February 4, 2020. Plaintiff Angel Pedrosa brings his claim against Defendant, the City of Evansville ("the City"), pursuant to 42 U.S.C. § 1983, alleging that the City failed to adequately train, supervise, and discipline its officers and acquiesced in a widespread practice by the Evansville Police Department of racial profiling and the use of excessive force that caused him constitutional injury. For the reasons detailed below, we <u>GRANT</u> the City's Motion for Summary Judgment.

**Factual Background**

At approximately 3:16 p.m. on April 2, 2015, Officers from the Evansville Police Department ("EPD") responded to a reported stabbing at the United Caring Shelter located at Sixth and Ingle Streets in Evansville, Indiana. Exh. H to Chandler Dep. After EPD officers arrived at the scene and interviewed witnesses, they determined that the victim had not been stabbed, but instead had suffered a laceration after having been knocked unconscious and kicked in the head. *Id.* Two witnesses identified the suspect as

1

an Hispanic male named "Angel" and reported that "Angel" had punched the victim, rendering him unconscious, and had then kicked the victim in the head before running from the scene. *Id.*

The EPD officers were also informed that a 911 caller had provided a physical description of the suspect, the direction the suspect had fled as well as the first name of "Angel." Chandler Dep. at 45. EPD officers then set up a perimeter watch and eventually located an individual they believed to be the suspect—Mr. Pedrosa—riding in the passenger seat of a vehicle being operated at Main and Sycamore Streets. *Id.*; Exh. H to Chandler Dep. EPD officers stopped the vehicle, assisted by numerous other officers who responded to the area to assist in the investigation. Chandler Dep. at 45. As EPD officers approached the vehicle, they ordered Mr. Pedrosa to "step out of the truck," and he complied. *Id.* at 54.

After exiting the vehicle, EPD officers ordered Mr. Pedrosa to put his hands behind his back, but he did not comply, instead stiffening his arms and refusing. *Id.* at 53. When the EPD officers repeated the order to place his hands behind his back, Mr. Pedrosa again refused. *Id.*; Exh. H to Chandler Dep. The officers next resorted to force to apprehend him, which involved hand strikes or punches and "tasing" several times until he finally submitted to being handcuffed. Chandler Dep. at 54–55; Exh. H to Chandler Dep. Mr. Pedrosa testified in his deposition that he continued to shout at the officers to stop hitting and tasing him, but they did not stop until he "acted like [he] was dead." Pedrosa Dep. at 15. Mr. Pedrosa further testified that he was not resisting arrest at the time, he simply did not understand what was happening or what the officers were

saying to him as he is a non-English speaker. *Id.* at 14–15. Immediately following his arrest, EPD officers transported Mr. Pedrosa to the hospital. After receiving medical treatment, Mr. Pedrosa sought no additional medical or mental health treatment related to his April 2, 2015 arrest. *Id.* at 6–7.

Mr. Pedrosa was arrested and charged, *inter alia*, with Misdemeanor Resisting Arrest. IND. CODE § 35-44.1-3-1(a)(1). On February 16, 2018, Mr. Pedrosa was found guilty following a bench trial of Resisting Law Enforcement, a Class A Misdemeanor. Mr. Pedrosa was sentenced to time served on April 18, 2018, which ran concurrently with sentences he received that same day for two unrelated felony convictions.

Mr. Pedrosa filed his complaint in this action on March 15, 2017, alleging that the EPD and unnamed EPD officers used excessive force against him, in violation of his Fourth Amendment rights, and that the City failed to adequately train, supervise, and discipline its officers and condones the EPD's custom or practice of using racial profiling and unlawful force that results in constitutional deprivation. We dismissed Mr. Pedrosa's claims against the EPD and the unnamed individual officers in our November 9, 2017 Order. The City, which is the only remaining defendant in this action, has now moved for summary judgment on Mr. Pedrosa's *Monell* claim.

## Legal Analysis

I. **Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for

3

summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

**II.    Discussion**

Despite Mr. Pedrosa's counsel's assertions otherwise, the only claim remaining in this litigation is Mr. Pedrosa's § 1983 claim against the City, [1] which is governed by the well-established standards set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Under *Monell*, the City may be held liable for money damages under § 1983 only "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citations omitted). Further, "[t]he plaintiff must also show a direct causal connection between the policy or practice and his injury …." *Rice ex rel. Rice v.*

---

[1] Mr. Pedrosa's brief in opposition to the City's motion for summary judgment argues that the City "has pigeon-holed Pedrosa's claim as a *Monell* claim," despite the fact that Mr. Pedrosa "has always claimed that his treatment by multiple officers with the Evansville Police Department resulted from excessive force in violation of his Fourth Amendment rights" and "there is more to his complaint than the requirements associated with *Monell*." Pl.'s Resp. at 5. However, we dismissed Mr. Pedrosa's Fourth Amendment claim against the unnamed individual EPD officers in our November 9, 2017 Order; therefore, those claims are no longer a part of this lawsuit, leaving as Mr. Pedrosa's only remaining potential basis for recovery his *Monell* claim against the City.

*Correctional Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). While there is no "bright-line" rule defining a widespread custom or practice, a plaintiff generally "must introduce evidence that acquiescence on the part of the policy makers was apparent and amounted to a policy decision." *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (quotation marks and citation omitted).

Here, Mr. Pedrosa contends that the City failed to adequately train, supervise, and discipline its officers and consciously ignored the practice of racial profiling and use of excessive force within the EPD. It is true that "[f]ailure to train or turning a blind eye to repeated excessive force violations could both give rise to *Monell* liability." *Mendez v. City of Chicago*, No. 1:18 C 6313, 2019 WL 4934698, at *3 (N.D. Ill. Oct. 7, 2019). However, because Mr. Pedrosa cites no evidence to support the allegations in his complaint to establish any of the elements of his *Monell* claim, the City is entitled to summary judgment on this claim.

Inadequate police training can serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Deliberate indifference exists where the defendant (1) failed 'to provide adequate training in light of foreseeable consequences'; or (2) failed 'to act in response to repeated complaints of constitutional violations by its officers.'" *Miranda v. County of Lake*, 900 F.3d 335, 345 (7th Cir. 2018) (quoting *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029–30 (7th Cir. 2006)).

The City has presented uncontroverted evidence establishing that, at the time of Mr. Pedrosa's arrest, it had a training program in place for its officers that included, *inter alia*, instruction regarding the proper use of force in various situations as well as training on interactions with non-English speaking individuals. In response, Mr. Pedrosa has failed to put forth any evidence or even any developed argument to show that such training was not actually being provided to EPD officers or that the training was inherently defective or inadequate, much less that the City was aware of such deficiencies in its training procedures and did nothing. Accordingly, his failure-to-train claim cannot survive summary judgment.

Likewise, Mr. Pedrosa fails to provide any factual basis to establish that policymakers knew of a practice of racial profiling and use of excessive force in the EPD or that such conduct was so widespread and persistent that it constituted a *de facto* policy. Mr. Pedrosa argues that "excessive force is not an unfamiliar complaint against the City of Evansville's law enforcement", referencing only in general terms that "numerous incidents … have occurred at the hands of Evansville Police Officers." Pl.'s Resp. at 5. However, he cites only two instances involving excessive force allegations during the relevant time period, one of which involved the EPD's use of a flash bang device and the other which centered on force used by an EPD police canine. *See Becker v. Elfreich*, 821 F.3d 920 (7th Cir. 2016); *Milan v. Bolin*, 795 F.3d 726 (7th Cir. 2015). Neither case involved a policy or custom alleging racial profiling.

"It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once. The plaintiff

must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) (quoting *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)). Mr. Pedrosa's citation to two alleged excessive force cases without further elaboration or explanation as to their connection with or relevance to this case is insufficient to satisfy the standard on summary judgment. His *Monell* claim based on a widespread practice or custom must therefore be dismissed.

### III. Conclusion

For the reasons detailed above, Defendant's Motion for Summary Judgment is GRANTED. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: 5/8/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com

Clay W. Havill
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
chavill@zsws.com

Mark Kelly Phillips
MARK K. PHILLIPS, ATTORNEY AT LAW, P.C.
markphillipslawyer@yahoo.com

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com

Clifford R. Whitehead
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
cwhitehead@zsws.com